**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

Jason Gies,

     Plaintiff,

v.

Windrose Technology Inc.,
a foreign corporation,

     Defendant.

Case No.

Hon.
United States District Judge

Hon.
United States Magistrate Judge

PITT, MCGEHEE, PALMER,
BONANNI & RIVERS P.C
Michael L. Pitt (P24429)
Attorneys for Plaintiff
117 W. Fourth Street, Suite 200
Royal Oak, Michigan 48067
(248) 398-9800
mpitt@pittlawpc.com

---

**COMPLAINT FOR DAMAGES AND JURY DEMAND**

Plaintiff Jason Gies ("Gies") brings this wrongful termination action against his former employer, Windrose Technology Inc. ("Windrose" or "Company") for terminating him in violation of his employment agreement ("Agreement").

**Introduction**

Jason Gies, age 47, was terminated from his position of Head of Operations, North America on Company on October 12, 2025, six days after sending to CEO Wen Han ("Han") a Notice to Cure deficiencies in the nature of unpaid salary and

benefits as required by his Agreement.

Upon notice of termination, Gies, through his counsel, requested payment of Severance as provided in the Agreement. Windrose has refused to pay the agreed upon Severance or unpaid salary and benefits requiring the institution of this lawsuit.

## Parties Jurisdiction and Venue

1.      Gies is a resident of Oakland County, Michigan.

2.      Windrose has its principal place of business in Hefei, China and Sunnyvale, California.

3.      Windrose is incorporated in Antwerp, Belgium.

4.      All of the events in controversy occurred in this judicial district.

5.      This Court has diversity jurisdiction over this matter because Plaintiff is a resident and citizen of the State of Michigan and Windrose is incorporated in Belgium and has as its principal places of business Hefei China or Sunnyvale, California.

6.      The amount in controversy exceeds $75,000.

7.      Venue is established in this District Court because the events giving rise to the lawsuit occurred in the Eastern District of Michigan.

8.      The Parties to this Agreement have consented to the jurisdiction of federal court located in Oakland County Michigan. Oakland County is part of the Eastern District of Michigan federal judicial district. The Company has consented to personal jurisdiction in federal court in Michigan. Agreement Section 6A.

**Statement of Facts**

9.     On January 30, 2025, Windrose entered into an Employment Agreement with Gies whereby Gies was appointed as Head of Operations, North America.  The Agreement is attached as Exhibit 1.

10.     Windrose Technology designs and manufactures zero-emission, heavy-duty, long-haul electric trucks with the goal of making the trucking industry cleaner, more affordable, and more comfortable for drivers. The Company develops its own technologies for the tractors, batteries, chassis, and e-axles, aiming to create a new generation of electric trucks that can compete with diesel vehicles.

11.     The signatory on behalf of Windrose was Wen Han who is the Founder, Chairman and Chief Executive Officer.

12.     Han was born in China around 1991, he later attended Williams College and earned an MBA from Stanford University. Before starting Windrose Technology in 2022, Han was a Chief Strategy and Financial Officer at Plus, an autonomous trucking company. Windrose Technology was founded in China but has since established operations in Belgium and in the United States and other parts of Europe.  United States operations were located in Michigan.

13.     Gies' first day of employment was February 1, 2025.  At all times, Gies competently fulfilled every obligation required of per the Agreement. Gies was promised an annual base salary of $275,000 plus certain benefits provided for in the Agreement,

14.   The initial term of employment was two years.  Section 1D of the Agreement.

15.   The Agreement provided that Gies could terminate his employment for "Good Reason" because of non-payment of salary or benefits on condition that he provide the Company with a Notice to Cure that allows the Company time to "cure" the deficiencies within the time frame permitted under the Agreement.

16.   On October 6, 2025, Gies, through his counsel, sent to Han a Notice to Cure as set forth.  The Notice is attached s Exhibit 2.

Dear CEO Han:

Jason has retained me to represent his interests in connection with his employment relationship with Windrose Technology, LLC ("Company").

### J   Agreement Terms at Issue

Section 4B(*iii*) of the above referenced employment agreement ("Agreement") provides that Jason may terminate his employment relationship and that he shall be eligible for the Severance Amount specified in Section 4B(E) provided he has "Good Reason" to terminate the relationship as defined in Section 4B(B) and complies with the "Good Reason Process" as set forth in Section 4B(C) of the Agreement.

The "Good Reason Process" requires that Jason "reasonably determine in good faith that a "Good Reason" condition has occurred" and that Jason "notif[ies] the Company in writing of the occurrence of the Good Reason condition within sixty (60) days of the occurrence of such condition" and that he "cooperate in good faith with the Company's efforts, for a period of at least thirty (30) days following such notice (the 'Good Reason Cure Period'), to remedy the condition."

"Good Reason" currently exists because there has been a "material diminution in [Jason's]base salary, bonus, options and benefits" and/or "a breach of any

4

material provision of this Agreement by the Company" in violation of Sections 4B(B) (*ii*) and (*iii*).

Section 1C "Base Salary" provides that during the Term, the Company will pay [Jason] a base salary at the rate of $275,000 per year, payable in accordance with the Company's standard payroll schedule, on the 15th of each months in arrears."

Section 1E" Equity Compensation" provides that "[s]ubject to the approval of the Board [Jason] will be granted an option to purchase up to twenty-five thousand (25,000) shares of the Company's Common Stock…"

Section 1I "Electric Car Allowance" provides "Up to $1,250 per month or a Company provided electric vehicle.

Section 1L "Executive Benefits" provides "Detroit Athletic Club.  As part of [Jason's] benefits package, the Company will provide and cover the membership cost to the Detroit Athletic Club (DAC)…"

### Notice to Cure

The Company has not paid Jason's salary for the months of May or August. The Company has not provided Jason with the promised Equity Compensation, paid the monthly car allowance or provide Jason with an electric vehicle or paid for his membership in the DAC.  The breaches set forth in this letter are of a continuing nature and this letter constitutes a timely notice of a "Good Reason condition."

Jason will "cooperate in good faith with the Company's efforts, for a period of at least thirty (30) days following such notice (the 'Good Reason Cure Period'), to remedy the condition."

Given the existence of an employment relationship with Jason, it is perfectly acceptable for you or your counsel to communicate directly with Jason for the purpose of effectuating a cure of these deficiencies.  Communications which are responsive to the legal issues raised in this letter or which will impact his employment relation with the Company should be directed to me…..

Signed Michael Pitt, Counsel for Gies.

17.    Han, upon receipt of this correspondence from Gies counsel, advised

5

Gies that steps would be taken to provide him with payments that would bring Windrose's obligations current.

18.     On October 12, 2025, Han notified Gies by email that his employment was terminated.   Gies was immediately cut off from the Company computer networks.   No payments were made to Gies as requested in the October 6, 2025, Notice to Cure communication.

19.     Section 4B(E) of Gies' employment agreement provides that:

"[t]he Severance Amount for termination by the Company without Cause or by you with Good Reason (a) during the first two (2) years of your employment shall be the greater of: (i) your salary for the remainder of the term of your employment, and (ii) four (4) months of salary and (b) for subsequent years shall be two (2) months of salary for every full year of service. In each case, the Severance Amount shall also include acceleration of unvested options in accordance with the Equity Documents and an amount equal to, if you are participating in the Company's group health insurance plans on the effective date of termination and timely elect and remain eligible for continued coverage under the Consolidated Omnibus Budget Reconciliation Act ("COBRA"), the Company's and your portion of the COBRA premiums until the earlier of (i) the time you secure your next employment and (ii) eighteen (18) months from the date of termination."

20.     Two years of annual salary is $550,000.   His monthly rate ($550,000 divided by 24 months) is $22,916.66.   Gies has been paid 6 months for a total of $137,499.96.   The unpaid wage portion of the Company's Severance obligation is therefore $412,500.04.

21. The amount of the accelerated Equity Options and the amount of unpaid benefits is to be determined.

### Cause of Action: Breach of Employment Agreement

22. Gies has made a demand for payment of the Severance benefits as provided in his Agreement with Windrose.

23. Gies was terminated without cause and is therefore eligible to recover the Severance Benefits provided for in the Agreement.

24. Providing the Company with a Notice to Cure letter is not "cause" for Gies' separation.

25. At no time during his employment relationship with Windrose did management raise performance or integrity issues which might serve as a basis for a "cause" termination.

26. The unpaid wage portion of the Severance obligation is $412,500.04.

27. The amount of the non-wage portion of the Severance Benefit is to be determined.

Accordingly, Gies requests the following relief from this Court:

a. An order of this Court awarding him the Severance Benefits he is found to be entitled to.

b. An order of this Court awarding interest, costs and attorney fees; and

c.   An order of this Court awarding such other relief as this Court deems just and equitable.


PITT, MCGEHEE, PALMER, BONANNI & RIVERS P.C

By: */s/ Michael L. Pitt*
Michael L. Pitt (P24429)
Attorney for Plaintiff
117 W. Fourth Street, Suite 200
Royal Oak, Michigan 48067
(248) 398-9800
mpitt@pittlawpc.com

Dated: October 27, 2025

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

Jason Gies,

      Plaintiff,                      Case No.

v.                              Hon.
                                   United States District Judge

Windrose Technology Inc.,
a foreign corporation,            Hon.
                                 United States Magistrate Judge

      Defendant.

PITT, MCGEHEE, PALMER,
BONANNI & RIVERS P.C
Michael L. Pitt (P24429)
Attorneys for Plaintiff
117 W. Fourth Street, Suite 200
Royal Oak, Michigan 48067
(248) 398-9800
mpitt@pittlawpc.com

---

**JURY DEMAND**

Plaintiff, Jason Gies, by and through his attorneys, hereby demands a trial by jury on all matters so triable.

PITT, MCGEHEE, PALMER, BONANNI & RIVERS P.C

By: */s/ Michael L. Pitt*
Michael L. Pitt (P24429)
Attorney for Plaintiff
117 W. Fourth Street, Suite 200
Royal Oak, Michigan 48067
(248) 398-9800
mpitt@pittlawpc.com

Dated: October 27, 2025