Docusign Envelope ID: AC323DDD-A7D1-4CFE-8F19-074E2055061E

**Windrose Technology**     **www.windrose.tech**     Belgium | Netherlands | Australia | US | China

Dear Jason Gies,

Windrose Technology Inc. (the "Company"), is pleased to offer you employment pursuant to the terms of this executive employment agreement (the "Agreement").



1

Docusign Envelope ID: AG333DDD-A7D1-4CFE-8F19-074E2055061E

**Windrose Technology**     www.windrose.tech     Belgium | Netherlands | Australia | US | China

| 1 | Key details | |
|---|---|---|
| A | Start | Provided that you satisfy the conditions described in the last subsection of this Agreement, your first day of employment with the Company will be February 1, 2025, or another date mutually agreed upon in writing between you and the Company.<br><br>The actual day you begin employment will be referred to as the "Start Date" and the period between the Start Date and your date of termination shall be referred to as the "Term". |
| B | Position | During the Term, your title will be Head of Operations, North America, and you will report to the Company's Chief Executive Officer (the "CEO").  This is a full-time, overtime-exempt position.<br><br>While you render services to the Company, you will not engage in any other employment, consulting or other business activity (whether full-time or part-time) that would create a conflict of interest with the Company.  By signing this Agreement, you confirm to the Company that you have no contractual commitments or other legal obligations that would prohibit you from performing your duties for the Company.<br><br>Modification of Title:<br><br>Your title as specified in this Agreement may be modified during the term of employment upon mutual written agreement between you and the Company. Any change in title shall be documented in an addendum to this Agreement, signed by both parties, and shall not affect any other terms or conditions of employment unless explicitly stated. Such changes shall align with the needs of the Company and your qualifications, experience, and contributions. |
| C | Base salary | During the Term, the Company will pay you a base salary at the rate of $275,000 per year, payable in accordance with the Company's standard payroll schedule, on the 15th of each month in arrears.<br><br>This base salary shall be subject to a 4% cost-of-living adjustment, applied annually on the anniversary of the Start Date. If the title and or responsibilities increase, the parties agree to renegotiate the base salary to reflect the revised roles and responsibilities. |
| D | Term | The initial term of the agreement will be two (2) years with an automatic renewal for subsequent one-year periods starting at the end of the initial two-year term, unless the Company or you gives at least three (3) months' prior written notice before the end of the then-current contract period, in which case this Agreement will expire at the end of such period (unless otherwise renegotiated and extended). |

Docusign Envelope ID: AC323DDD-A7D1-4CFE-8F49-074E2055061F

**Windrose Technology**      www.windrose.tech     Belgium | Netherlands | Australia | US | China

| E | Equity compensation | Subject to the approval of the Board, you will be granted an option to purchase up to twenty-five thousand (25,000) shares of the Company's Common Stock at a purchase price of $0.99, as well as another 25,000 shares at the beginning of the 2nd year of your employment (the "Option") with the exercise price being 50% of the most recently closed financing price at that time.<br><br>Further, You will be eligible to receive future options or other incentive grants at the discretion of the Board.<br><br>The Option will be subject to the terms and conditions applicable to options granted under the stock option plan in effect at the time of the grant and the applicable stock option agreement (the "Equity Documents").<br><br>After your purchase of each 25,000-share tranche of the Option shares, 25% of such shares will vest after 12 months of subsequent continuous service, and the balance will vest in equal monthly installments over the following 36 months of continuous service, as described in the Equity Documents.<br><br>In the event this Agreement is terminated by the Company without Cause, then all granted Option shares will immediately vest. |
| F | Reimbursement | All reasonable business expenses that are documented by you and incurred in the ordinary course of business during the Term will be reimbursed in accordance with the Company's standard policies and procedures.<br><br>Unless otherwise approved by the CEO, Business Class airfare shall be permitted only for flights that are overseas and overnight. |
| G | Employment Benefits | As an employee of the Company, you will be eligible during the Term to participate in Company-sponsored benefits generally made available to the Company's executive employees.  You will be subject to all rules and policies applicable to employees of the Company generally or at your level or in your position.<br><br>Insurance:<br>• Comprehensive health, dental, and vision insurance<br>• Life insurance: [5x] annual base salary<br>• D&O insurance coverage consistent with the Company's standard policy for all executives and board members |
| H | Holidays | The Company will pay standard holiday pay for the distributed schedule yearly. |
| I | Electric Car Allowance | Up to $1,250 per month or a Company-provided electric vehicle. |
| K | Vacation Time | 20 days per year (with an additional day each year of service up to a total of 30 days). |

3

Docusign Envelope ID: AG323DDD-A7D1-4CFE-8F19-074E2055061F

**Windrose Technology**    **www.windrose.tech**    Belgium | Netherlands | Australia | US | China

| L | Executive Benefits | Detroit Athletic Club Membership

As part of your benefits package, the Company will provide and cover the membership cost to the Detroit Athletic Club (DAC). This membership is intended to support business development, networking, and client engagement activities.

The Company will cover standard membership dues and associated fees. Any additional personal expenses incurred beyond the membership fees, including dining, event participation, or guest fees, shall be your responsibility, unless incurred for business purposes, in which case they will be reimbursed per normal Company policy

The use of this membership is subject to the Company's policies and any rules or regulations set forth by the Detroit Athletic Club. Continued payment and retention of the membership are contingent upon your active employment with the Company. |
|---|---|---|

4. Subject to the terms of this Section 4, the Company may only terminate your employment during the Term per the terms of this Agreement, provided the grounds are not otherwise specifically prohibited by law, and any contrary representations that may have been made to you are superseded by this Agreement.

| A | Compensation and Benefits Upon Termination Generally. | If your employment with the Company is terminated for any reason during the Term, including your death or disability, the Company shall pay or provide to you (or your heirs) any earned but unpaid base salary, unpaid expense reimbursements, accrued but unused vacation (if any), and any vested benefits you may have under the Company's employee benefit plans through the date of termination (the "Accrued Benefit"). |
|---|---|---|
| B | Compensation and Benefits Upon Termination Without Cause or for Good Reason. | If your employment is terminated by the Company without Cause (defined below) or by you for Good Reason (defined below), then, in addition to the Accrued Benefit and subject to your signing the Separation Agreement (defined below) and the Separation Agreement becoming effective within the time period set forth therein, the Company shall pay you the Severance Amount (defined below) |
| For purposes of this Agreement, the following terms shall have the following definitions: | | |

4

Docusign Envelope ID: AG323DDD-A7D1-4CFE-8F19-074E2055061F

**Windrose Technology**     www.windrose.tech     Belgium | Netherlands | Australia | US | China

| (A) | "Cause" | shall mean (i) conduct by you constituting a material act of misconduct in connection with the performance of your duties, including, without limitation, misappropriation of funds or property of the Company or any of its subsidiaries or affiliates (Cause does not include the occasional, customary and reasonable use of Company property for personal purposes, e.g., use of Company phone, computer, or Company-provided automobile): |
|---|---|---|
| | | (ii) A finding of guilt of (A) any felony; or (B) a misdemeanor involving moral turpitude, deceit, dishonesty or fraud; |
| | | (iii) any conduct by you that would reasonably be expected to result in material injury or material reputational harm to the Company or any of its subsidiaries and affiliates if you were retained in your position; |
| | | (iv) your continued willful non-performance or underperformance of your responsibilities hereunder (other than by reason of your physical or mental illness, incapacity or disability) which has continued for more than thirty (30) days following written notice of such non-performance from the CEO (the "For Cause Cure Period"). For the avoidance of doubt, if you cure the "for Cause" condition during the For Cause Cure Period, Cause shall be deemed not to have arisen; |
| | | (v) your breach of any obligation in the PIIA; or |
| | | (vi) a material violation by you of any of the Company's employment policies. |
| | | In the event the Company decides to terminate you for Cause, the Company must provide notice of such termination for Cause, which notice shall specify, in reasonable detail, the reasons for such termination as determined by the Company. |
| | | You shall be permitted to present your objections to termination for Cause to the Company within fifteen (15) business days after receipt of the Notice of Termination for Cause. If the Company cannot substantiate its grounds for a "for Cause" termination within fifteen (15) business days after you have submitted your objections, the termination shall be deemed to be without Cause and your termination shall be governed by the provisions of Section 4(b) hereof. |

Docusign Envelope ID: AG323DDD-A7D1-4CFE-8F49-074E2055061F

**Windrose Technology**    www.windrose.tech    Belgium | Netherlands | Australia | US | China

| (B) | "Good Reason" | shall mean that you have complied with the Good Reason Process (defined below) following the occurrence of any of the following events:<br><br>(i) a material diminution in your responsibilities, authority or duties; *provided* that a change in control of the Company and subsequent conversion of the Company to a division or unit of the surviving or acquiring entity by itself, without more, will not result in a material diminution absent a material diminution of your title, responsibilities, authority or duties with respect to such division or unit;<br><br>(ii) a material diminution in your base salary, bonus, options and benefits except for across-the-board salary reductions based on the Company's financial performance similarly affecting all or substantially all similarly situated employees;<br><br>(iii) a breach of any material provision of this Agreement by the Company, which breach is not cured within thirty (30) days following written notice to the Company of such breach; or<br><br>(iv) the Company shall have required that you relocate your principal work location to any place which is more than fifty (50) miles from your principal place of work as of the Start Date. |
|---|---|---|
| (C) | "Good Reason Process" | shall mean that:<br>(i) you reasonably determine in good faith that a "Good Reason" condition has occurred;<br><br>(ii) you notify the Company in writing of the occurrence of the Good Reason condition within sixty (60) days of the occurrence of such condition;<br><br>(iii) you cooperate in good faith with the Company's efforts, for a period of at least thirty (30) days following such notice (the "Good Reason Cure Period"), to remedy the condition;<br><br>(iv) notwithstanding such efforts, the Good Reason condition continues to exist; and<br><br>(v) you terminate your employment within sixty (60) days after the end of the Good Reason Cure Period.  For the avoidance of doubt, if the Company cures the Good Reason condition during the Good Reason Cure Period, Good Reason shall be deemed not to have arisen. |
| (D) | "Separation Agreement" | shall mean a separation agreement in a form satisfactory to you and the Company containing, among other provisions, a mutual release of claims in favor of you and the Company and its related persons and entities, non-disparagement, and reaffirmation of post-employment continuing obligations to the Company under the PIIA. |

Docusign Envelope ID: AG323DDD-A7D1-4CFE-8F19-074E2055061F

**Windrose Technology**    **www.windrose.tech**    Belgium | Netherlands | Australia | US | China

| (E) | "Severance Amount" | The Severance Amount for termination by the Company without Cause or by you with Good Reason (a) during the first two (2) years of your employment shall be the greater of: (i) your salary for the remainder of the term of your employment, and (ii) four (4) months of salary and (b) for subsequent years shall be two (2) months of salary for every full year of service. |
|---|---|---|
| | | In each case, the Severance Amount shall also include acceleration of unvested options in accordance with the Equity Documents and an amount equal to, if you are participating in the Company's group health insurance plans on the effective date of termination and timely elect and remain eligible for continued coverage under the Consolidated Omnibus Budget Reconciliation Act ("COBRA"), the Company's and your portion of the COBRA premiums until the earlier of (i) the time you secure your next employment and (ii) eighteen (18) months from the date of termination. |

Docusign Envelope ID: AG323DDD-A7D1-4CFE-8F19-074E2055061F

**Windrose Technology**  **www.windrose.tech**  Belgium | Netherlands | Australia | US | China

5. Covenants

| A | Proprietary Information and Inventions Agreement | As a condition of your employment with the Company and as a material term of this Agreement, you agree to execute contemporaneously with the execution of this Agreement and comply during and after the Term with the Proprietary Information and Inventions Agreement (the "PIIA") attached hereto as Exhibit A, the terms of which are hereby incorporated by reference into this Agreement. |
|---|---|---|
| B | Litigation and Regulatory Cooperation. | During and after the Term, you shall cooperate in good faith with the Company and all of its subsidiaries and affiliates (including its and their outside counsel) in connection with the contemplation, prosecution and defense of all phases of existing, past and future claims or actions which relate to events or occurrences that transpired while you were employed by the Company.<br><br>Your cooperation in connection with such claims or actions shall include, but not be limited to, being available to meet with counsel to prepare for discovery or trial and to act as a witness on behalf of the Company at mutually convenient times, at the Company's expense. During and after the Term, you also shall cooperate fully with the Company in good faith in connection with any investigation or review of any federal, state or local regulatory authority as any such investigation or review relates to events or occurrences that transpired while you were employed by the Company, at the Company's expense. |

8

Docusign Envelope ID: AC323DDD-A7D1-4CFE-8F19-074E2055061F

**Windrose Technology**      **www.windrose.tech**    Belgium | Netherlands | Australia | US | China

6. Miscellaneous:

| | | |
|---|---|---|
| A | Consent to Jurisdiction | The parties hereby consent to the jurisdiction of the state and federal courts located in Oakland County in the State of Michigan.  Accordingly, with respect to any such court action, you<br>(i) submit to the personal jurisdiction of either state or federal courts located in Oakland County, Michigan<br>(ii) consent to service of process; and<br>(iii) waive any other requirement (whether imposed by statute, rule of court, or otherwise) with respect to personal jurisdiction or service of process. |
| B | Taxes | All forms of compensation referred to in this Agreement are subject to reduction to reflect applicable withholding and payroll taxes and other deductions required by law.<br><br>You agree that the Company does not have a duty to design its compensation policies in a manner that minimizes your tax liabilities, and you will not make any claim against the Company or its Board related to tax liabilities arising from your compensation. |
| C | Integration | This Agreement, together with the PIIA, 2022 Equity Incentive Plan and any other plans or agreements referenced herein, constitutes the entire agreement between the parties with respect to the subject matter hereof and supersedes all prior agreements between the parties concerning such subject matter |
| D | Successors | This Agreement shall inure to the benefit of and be enforceable by your personal representatives, executors, administrators, heirs, distributees, devisees and legatees. |
| E | Enforceability | If any portion or provision of this Agreement (including, without limitation, any portion or provision of any section of this Agreement) shall to any extent be declared illegal or unenforceable by a court of competent jurisdiction, then the remainder of this Agreement, or the application of such portion or provision in circumstances other than those as to which it is so declared illegal or unenforceable, shall not be affected thereby, and each portion and provision of this Agreement shall be valid and enforceable to the fullest extent permitted by law |
| F | Survival | The provisions of this Agreement shall survive the termination of this Agreement and/or the termination of your employment to the extent necessary to effectuate the terms contained herein. |
| G | Waiver | No waiver of any provision hereof shall be effective unless made in writing and signed by the waiving party.<br><br>The failure of any party to require the performance of any term or obligation of this Agreement, or the waiver by any party of any breach of this Agreement, shall not prevent any subsequent enforcement of such term or obligation or be deemed a waiver of any subsequent breach. |
| H | Notices | Any notices, requests, demands and other communications provided for by this Agreement shall be sufficient if in writing and delivered in person or sent by a nationally recognized overnight courier service or by registered or certified mail, postage prepaid, return receipt requested, to |

Docusign Envelope ID: AC332DDD-A7D1-4CFE-8F49-0745205506 1F

**Windrose Technology**     **www.windrose.tech**   Belgium | Netherlands | Australia | US | China

| | | you at the last address you have filed in writing with the Company or, to the Company, at its main offices, to the attention of the CEO. |
|---|---|---|
| I | Successors to and Assigns of the Company | This Agreement and the PIIA shall inure to the benefit and be enforceable by the Company's successors and assigns. |
| J | Amendment | This Agreement may be amended or modified only by a written instrument signed by you and by a duly authorized representative of the Company |
| K | Governing Law | The terms of this Agreement and the resolution of any disputes as to the meaning, effect, performance or validity of this Agreement or arising out of, related to, or in any way connected with, this Agreement, your employment with the Company or any other relationship between you and the Company (the "Disputes") will be governed by Michigan law, excluding laws relating to conflicts or choice of law. |
| L | Counterparts | This Agreement may be executed in any number of counterparts, each of which when so executed and delivered shall be taken to be an original; but such counterparts shall together constitute one and the same document. |
| M | Conditions to offer | As with all employees, the Company's offer of employment to you is also conditioned on your submission of satisfactory proof of your identity and your legal authorization to work in the United States and, if requested, your completion of a standard background check to the satisfaction of the Company.<br><br>This offer is also conditioned on your signing and returning this Agreement and the PIIA to the Company by no later than January 31, 2025. |

.

Docusign Envelope ID: AC332DDD-A7D1-4CFE-8F49-074520550061F

**Windrose Technology**     **www.windrose.tech**     Belgium | Netherlands | Australia | US | China

We hope that you will accept our offer to join the Company. You may indicate your agreement with these terms and accept this offer by signing and returning a copy of this Agreement and the PIIA by the date specified in the last subsection of the Agreement.

IN WITNESS WHEREOF, the parties have executed this Agreement as of the date set forth below.

| Windrose Technology Inc. | I have read and accept this Agreement: |
|---|---|
| Signat [DocuSigned by: *Wen Han* 08DACBE31C854C7...] | Signatu [Signed by: 434099F3633E4CC...] |
| Name: Wen Han | Name: Jason Gies |
| Title: Founder, Chairman and Chief Executive Officer | Date: 1/30/2025 |
| Date: 1/30/2025 | |

**Windrose Technology**     **www.windrose.tech**     Belgium | Netherlands | Australia | US | China

## EXHIBIT A

### PROPRIETARY INFORMATION AND INVENTIONS AGREEMENT

This Agreement is entered into as of the ___ day of _____, 2025 (the Effective Date), and sets forth in writing certain understandings and procedures applicable to my employment with Windrose Technology Inc. (the "Company").

**1.**     Duties.  In return for the compensation and benefits now and hereafter paid or provided to me, I hereby agree to perform those duties for the Company as the Company may designate from time to time.  During my employment with the Company, I further agree that I will (i) devote my best efforts to the interests of the Company, (ii) not engage in any other employment or in any conduct, in each case, that would be in direct conflict with the Company's interests or interfere with my ability to perform the duties of my position, and (iii) otherwise abide by all of the Company's policies and procedures as they may be established and updated from time to time. Furthermore, I will not (a) reveal, disclose or otherwise make available to any unauthorized person any Company password or key, whether or not the password or key is assigned to me or (b) obtain, possess or use in any manner a Company password or key that is not assigned to me.  I will use my best efforts to prevent the unauthorized use of any laptop or personal computer, peripheral device, cell phone, smartphone, personal digital assistant (PDA), software or related technical documentation that the Company issues to me.  I will not input, load or otherwise attempt any unauthorized use of software in any Company computer or other device, whether or not the computer or device is assigned to me.

**2.**     "Proprietary Information" Definition.  "Proprietary Information" means (a) any information that is confidential or proprietary, technical or non-technical information of the Company, including for example and without limitation, information that is a Company Related Innovation or is related to any Company Related Innovations (as defined in Section 5 below), concepts, techniques, processes, methods, systems, designs, computer programs, source documentation, trade secrets, formulas, development or experimental work, work in progress, forecasts, proposed and future products, marketing plans, business plans, customers and suppliers, employee information (such as compensation data and performance reviews)  and any other nonpublic information that has commercial value and (b) any information the Company has received from others that the Company is obligated to treat as confidential or proprietary, which may be made known to me by the Company, a third party or otherwise that I may learn during my employment with the Company.

**3.**     Ownership and Nondisclosure of Proprietary Information.  Any  Proprietary Information and all worldwide patents (including, but not limited to, any and all patent applications, patents, continuations, continuation-in-parts, reissues, divisionals, substitutions, and extensions), copyrights, mask works, trade secrets and other worldwide intellectual property and other rights in and to the Proprietary Information that are developed or conceived by me in the course of my employment during the term of the Executive Employment Agreement to which this Exhibit A is attached are the property of the Company, the Company's assigns, the Company's customers and the Company's suppliers, as applicable.  Subject to Section 14 (Defend Trade Secrets Act), I will not disclose any Proprietary Information to anyone outside the Company, and I will use and disclose Proprietary Information to those inside the Company only as necessary to perform my duties as an employee of the Company.  Nothing in this Agreement will limit my ability to provide truthful information to any government agency regarding potentially unlawful conduct. If I have any questions as to whether information is Proprietary Information, or to whom, if anyone, inside the Company, any Proprietary Information may be disclosed, I will ask my manager at the Company.

**4.**     "Innovations" Definition.  In this Agreement, "Innovations" means all discoveries, designs, developments, improvements, inventions (whether or not protectable under patent laws), works of authorship, information fixed in any tangible medium of expression (whether or not protectable under

12

**Windrose Technology**      www.windrose.tech      Belgium | Netherlands | Australia | US | China

copyright laws), trade secrets, know-how, ideas (whether or not protectable under trade secret laws), mask works, trademarks, service marks, trade names and trade dress.

**5.**      Disclosure and License of Prior Innovations.  I have listed on Exhibit B (Prior Innovations) all Innovations that were conceived, reduced to practice, created, derived, developed, or made (collectively, "Created") by me alone or jointly with others prior to my Employment Date and to which I retain any ownership rights or interest (these non-Company Related Innovations collectively referred to as the "Prior Innovations").  I represent that I have no rights in any Company Related Innovations other than those Prior Innovations listed in Exhibit B (Prior Innovations).  If nothing is listed on Exhibit B (Prior Innovations), I represent that there are no Prior Innovations as of my Employment Date.

**6.**      Company Related Innovations.  Company Related Innovations means any Innovations that are owned by me or in which I have any other right or interest that I, solely or jointly with others, create, derive, conceive, develop, make or reduce to practice during the term of and within the scope of my employment with the Company or with the use of any Company resources, facilities, equipment, or information (including without limitation Company Confidential Information) (the "Company Related Innovations").  I will not incorporate, or permit to be incorporated, any Innovations that I own or in which I have any other right or interest into any Company Related Innovations without Company's prior written consent.

**7.**      Disclosure and Assignment of Company Related Innovations.  I will promptly disclose and describe to the Company all Company Related Innovations.  I hereby do and will irrevocably assign to the Company or the Company's designee all my right, title, and interest in and to any and all Company Related Innovations, which assignment operates automatically upon the earliest of the Creation of the Company Related Innovations.  To the extent any of the rights, title and interest in and to Company Related Innovations cannot be assigned by me to the Company, I hereby grant to the Company an exclusive, royalty-free, transferable, irrevocable, worldwide, fully paid-up license (with rights to sublicense through multiple tiers of sublicensees) to fully use, practice and exploit those non-assignable rights, title and interest, including, but not limited to, the right to make, use, sell, offer for sale, import, have made, and have sold, the Company Related Innovations.  To the extent any of the rights, title and interest in and to Company Related Innovations can neither be assigned nor licensed by me to the Company (including non-assignable moral rights), I hereby irrevocably waive and agree never to assert the non-assignable and non-licensable rights, title and interest against the Company, any of the Company's successors in interest, or any of the Company's customers.

**8.**      Future Innovations.  I will disclose promptly in writing to the Company all Innovations conceived, reduced to practice, created, derived, developed, or made by me during my employment with the Company and for three (3) months thereafter, whether or not I believe the Innovations are subject to this Agreement, to permit a determination by the Company as to whether or not the Innovations are or should be considered Company Related Innovations.  The Company will receive that information in confidence.

**9.**      Notice of Nonassignable Innovations.  This Agreement does not apply to an Innovation that I develop entirely on my own time, and without using the Company's equipment, supplies, facilities or information, including any trade secret information during the term of this Agreement, except for those Innovations that:  (a)  directly relate to the Company's business or actual or demonstrably anticipated research or development; or (b)  result from any work performed by me on behalf of the Company.

**10.**      Cooperation in Perfecting Rights to Company Related Innovations.  I agree to perform, during and after my employment, at the Company's expense, all acts that the Company deems necessary or desirable to permit and assist the Company in obtaining and enforcing the full benefits, enjoyment, rights and title throughout the world in the Company Related Innovations and all intellectual property rights therein as provided to the Company under this Agreement.  If the Company is unable for any reason to secure my

**Windrose Technology**      www.windrose.tech     Belgium | Netherlands | Australia | US | China

signature to any document required to file, prosecute, register or memorialize the assignment of any rights or application or to enforce any right under any Company Related Innovations as provided under this Agreement, I hereby irrevocably designate and appoint the Company and the Company's duly authorized officers and agents as my agents and attorneys-in-fact to act for and on my behalf and instead of me to take all lawfully permitted acts to further the filing, prosecution, registration, memorialization of assignment, issuance, and enforcement of rights under the Innovations, all with the same legal force and effect as if executed by me.  The foregoing is deemed a power coupled with an interest and is irrevocable.

11.      Return of Materials.  At any time upon the Company's request, and when my employment with the Company is over, I will return all materials (including, without limitation, documents, drawings, papers, diskettes and tapes) containing or disclosing any Proprietary Information (including all copies thereof), as well as any keys, pass cards, identification cards, computers, printers, pagers, cell phones, smartphones, personal digital assistants or similar items or devices that the Company has provided to me.

12.      No Violation of Rights of Third Parties.  During my employment with the Company, I will not (a) knowingly breach any agreement to keep in confidence any confidential or proprietary information, knowledge or data acquired by me prior to my employment with the Company or (b) disclose to the Company, or use or induce the Company to use, any confidential or proprietary information or material belonging to any previous employer or any other third party.  I am not currently a party, and will not become a party, to any other agreement that is in conflict, or will prevent me from complying, with this Agreement.

13.      Publicity. I hereby consent to any and all uses and displays, by the Company and its agent, of my name, voice, likeness, image, appearance, and biographical information in, on, or in connection with any pictures, photographs, audio, and video recordings, digital images, websites, television programs, and advertising, other advertising, sales, and marketing brochures, books, magazines, other publications, CDs, DVDs, tapes, and all other printed and electronic forms and media throughout the world, at any time during or after the period of my employment by the Company, for all legitimate business purposes of the Company ("Permitted Uses"). I hereby forever release the Company and its directors, officers, employees, and agents from any and all claims, actions, damages, losses, costs, expenses, and liability of any kind, arising under any legal or equitable theory whatsoever at any time during or after the period of my employment by the Company, in connection with any Permitted Use.

14.      Non-Solicitation and Non-Competition. During my employment with the Company and for one (1) year thereafter, I will not (a) hire any employees of the Company, or solicit, encourage, or cause others to solicit or encourage any employee, customer, vendor, supplier or contractor of the Company to terminate their relationship with the Company, or (b) interfere with, impair, disrupt or damage the Company's relationship with any employee, customer, customer prospect, vendor, supplier or contractor of the Company by soliciting or encouraging others to solicit any of them for the purpose of diverting or taking away business from the Company.

Additionally, during my employment with the Company and for the period during which the Company is still paying any part of my Severance  Amount, I will not directly or indirectly, whether as an owner, director, officer, manager, consultant, agent or employee, accept employment or engage in activities that directly compete with the Company's business or with the reasonably anticipated planned product developments of the Company to which I contributed to as of my termination date. I acknowledge and agree that (i) due to the nature of the Company's business, there is no restriction on the geographical scope of my non-competition obligations to the Company, (ii) the Company competes on a worldwide basis and that the geographical scope of these limitations is reasonable and necessary for the protection of the Company's trade secrets and other Proprietary Information, and (iii) if a court of competent jurisdiction finds this non-competition provision invalid or unenforceable due to unreasonableness in time, geographic scope, or scope of the Company's business, then such court will interpret and enforce this provision to the maximum extent

14

**Windrose Technology**      www.windrose.tech      Belgium | Netherlands | Australia | US | China

that such court deems reasonable.  I understand that the restrictions set forth in this Section 13 are intended to protect the interest of the Company in its Proprietary Information, goodwill and established employee, customer, supplier, consultant and vendor relationships, and agree that such restrictions are reasonable and appropriate for this purpose.

15.      Defend Trade Secrets Act.  Pursuant to the Defend Trade Secrets Act of 2016, I acknowledge that I shall not have criminal or civil liability under any federal or state trade secret law for the disclosure of a trade secret that (A) is made (i) in confidence to a federal, state, or local government official, either directly or indirectly, or to an attorney and (ii) solely for the purpose of reporting or investigating a suspected violation of law; or (B) is made in a complaint or other document filed in a lawsuit or other proceeding, if such filing is made under seal. In addition, if I file a lawsuit for retaliation by the Company for reporting a suspected violation of law, I may disclose the trade secret to my attorney and may use the trade secret information in the court proceeding, if I (X) file any document containing the trade secret under seal and (Y) do not disclose the trade secret, except pursuant to court order. I further understand that nothing contained in this Agreement limits my ability to (A) communicate with any federal, state or local governmental agency or commission, including to provide documents or other information, without notice to the Company, or (B) discuss the terms of my employment, wages and working conditions to the extent expressly protected by applicable law or share compensation information concerning myself or others, except that this does not permit me to disclose compensation information concerning others that I obtain because my job responsibilities require or allow access to such information.

16.      Survival.  This Agreement (a) shall survive my employment by the Company; (b) does not in any way restrict my right to resign or the right of the Company to terminate my employment at any time, for any reason or for no reason; (c) inures to the benefit of successors and assigns of the Company; and (d) is binding upon my heirs and legal representatives.

17.      Injunctive Relief.  Both parties acknowledge and agree that in the event that either party violates this Agreement, the other party  will suffer irreparable and continuing damage for which money damages are insufficient, and  the non-breaching party is entitled to injunctive relief, a decree for specific performance, and all other relief as may be proper (including money damages if appropriate), to the extent permitted by law, without the need to post a bond.

18.      Notices.  Any notice required or permitted by this Agreement shall be in writing and shall be delivered as follows, with notice deemed given as indicated:  (a) by personal delivery, when actually delivered; (b) by overnight courier, upon written verification of receipt; (c) by facsimile transmission, upon acknowledgment of receipt of electronic transmission; ; (d) by email, effective (A) when the sender receives an automated message from the recipient confirming delivery or (B) one hour after the time sent (as recorded on the device from which the sender sent the email) unless the sender receives an automated message that the email has not been delivered, whichever happens first, but if the delivery or receipt is on a day which is not a business day or is after 5:00 pm (addressee's time) it is deemed to be received at 9:00 am on the following business day; or (e) by certified or registered mail, return receipt requested, upon verification of receipt.  Notices to me shall be sent to any address in the Company's records or other address as I may provide in writing.  Notices to the Company shall be sent to the Company's Human Resources Department or to another address as the Company may specify in writing.

19.      Governing Law; Forum.  The laws of the United States of America, as they relate to patents and copyrights, and the laws of the State of Michigan, as they relate to all other matters arising out of or relating to this Agreement, including its termination, shall govern this Agreement without giving effect to any conflict of law principles.  The parties each consent to the non-exclusive personal jurisdiction of the federal and state courts located in Michigan for any matter arising out of or relating to this Agreement.

15

Docusign Envelope ID: AC332DDD-A791-4CFE-8F49-074520550061F

**Windrose Technology**     **www.windrose.tech**     Belgium | Netherlands | Australia | US | China

20.      Severability.  If an arbitrator or court of law holds any provision of this Agreement to be illegal, invalid or unenforceable, (a) that provision shall be deemed amended to provide the Company the maximum protection permitted by applicable law and (b) the legality, validity and enforceability of the remaining provisions of this Agreement shall not be affected.

21.      Waiver; Modification.  If the Company waives any term, provision or breach by me of this Agreement, such waiver shall not be effective unless it is in writing and signed by the Company.  No waiver shall constitute a waiver of any other or subsequent breach by me.  This Agreement may be modified only if both parties consent in writing.

22.      Assignment.  The rights and benefits of this Agreement shall extend to all successors and assigns of the Company, whether by merger, reorganization, sale of assets, operation of law or otherwise.

23.      No Contract for Employment.  I understand that this Agreement does not create a contract for employment between the Company and me, and that my employment continues to be at will.

24.      Entire Agreement.  This Agreement, including any agreement to arbitrate claims or disputes relating to my employment that I may have signed in connection with my employment by the Company, represents my entire understanding with the Company with respect to the subject matter of this Agreement and supersedes all previous understandings, written or oral. I certify and acknowledge that I have carefully read all of the provisions of this Agreement and that I understand and will fully and faithfully comply with such provisions.

IN WITNESS WHEREOF, the parties have executed this Agreement as of the date and year written below.

| Company | Employee |
|---|---|
| Windrose Technology Inc. | I have read and accept this Agreement: |
| Signature: | Signature: |
| Name: Wen Han | Name: Jason Gies |
| Title: Founder, Chairman and Chief Executive Officer | Date: |
| Date: | |

16

Docusign Envelope ID: AC332DDD-A7D1-4CFE-8F49-074520550061F

**Windrose Technology**     **www.windrose.tech**    Belgium | Netherlands | Australia | US | China

Exhibit B
PRIOR INNOVATIONS

1.    Patent: US9829060B2

2.    Patent: US10807461B2

3.    Provisional Patent for CCS to MCS and MCS to CCS Charging converter cord with converter box

4.    Provisional Patent for distributed MCS charging system

5.    Concept for Marine vessel charging system for L2 portable applications

6.    Concept for in-cab AI-based driver experience, which includes training, corporate announcements, best practices, etc.